IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

**ROBERT N. CHAMBERS, JR.**                                          **PLAINTIFF**

vs.                                           CAUSE NO: 1:23-cv-118-SA-DAS

**AMERICAN FAMILY ASSOCIATION,**

**AFA ACTION,**

**TIMOTHY B. WILDMON,** individually and as Agent for the co-defendant entities,

**EDWARD VITAGLIANO,** individually and as Agent for the co-defendant entities,

**WALKER H. WILDMON,** individually and as Agent for the co-defendant entities,

**LEXIE HILL WILDMON,** individually and as Agent for the co-defendant entities,

**MARION "BUDDY" C. SMITH, JR.,** individually and as Agent for the co-defendant entities,

**RONALD E. COOK,** individually and as Agent for the co-defendant entities,

**STACEY SMITH FOWLER,** individually and as Agent for the co-defendant entities,

**ABRAHAM HAMILTON, III,** individually and as Agent for the co-defendant entities.                       **DEFENDANTS**

                                                                     **JURY TRIAL DEMANDED**

**COMPLAINT**

**COMES NOW**, Plaintiff, Robert N. Chambers, Jr. ("Chambers" or "Plaintiff"), by and through undersigned counsel, to bring this action against Defendants American Family Association ("AFA"), AFA Action (collectively, "the AFA Defendants"), and Timothy B. Wildmon, Edward Vitagliano, Walker H. Wildmon, Lexie Hill Wildmon, Marion "Buddy" C. Smith, Jr., Ronald E. Cook, Stacey Smith Fowler, and Abraham Hamilton, III (collectively, "the Individual Defendants"). As detailed below, Defendants have subjected Plaintiff to sexual harassment, a hostile work environment, retaliation, other Equal Employment Opportunity ("EEO") violations, wrongful termination under Mississippi state law, and slander. The actions of the AFA Defendants and their employees and agents as described herein constitute violations of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981. Plaintiff is seeking compensatory damages, punitive damages, and attorney's fees, among other such relief as allowed under relevant statutes. Plaintiff will show the Court as follows:

### I. PARTIES

1. Plaintiff, Robert N. Chambers, Jr., is an adult male citizen of Lee County, Mississippi, and a former employee of the AFA Defendants. Plaintiff currently resides at 2301 St. Andrews Drive, Belden, MS 38826.

2. Defendant AFA is a non-profit entity incorporated in the State of Mississippi, with its principal places of business at 108 Parkgate Drive, Tupelo, MS 38801. Defendant AFA may be served with process upon its registered agent, Donald E. Wildmon, 108 Parkgate Drive, Tupelo, MS 38803. Defendant AFA is an employer within the meaning of the Civil Rights Act of 1964.

3. Defendant AFA Action is a non-profit entity incorporated in the State of Mississippi, with its principal place of business at 108 Parkgate Drive, Tupelo, MS 38801. Defendant AFA

Action may be served with process upon its registered agent, Abraham Hamilton, III, 108 Parkgate Drive, Tupelo, MS 38803. Defendant AFA is an employer within the meaning of the Civil Rights Act of 1964.

4. Defendant Timothy B. Wildmon ("T. Wildmon") is an adult male citizen of Lee County, Mississippi. Defendant T. Wildmon is an employee of the AFA Defendants, and served as President of AFA and President Emeritus and Member of the Board of AFA Action during the relevant time period. Defendant T. Wildmon may be served at 108 Parkgate Drive, Tupelo, MS 38803. This defendant is called to defend Counts I (Retaliatory Termination), II (Hostile Work Environment), and III (Unlawful Termination).

5. Defendant Edward Vitagliano ("Vitagliano"), is an adult male citizen of Pontotoc County, Mississippi. Defendant Vitagliano is an employee of the AFA Defendants, and served as Executive Vice President of AFA, during the relevant time period. Defendant Vitagliano may be served at 108 Parkgate Drive, Tupelo, MS 38803. This defendant is called to defend Counts I (Retaliatory Termination), II (Hostile Work Environment), and III (Unlawful Termination).

6. Defendant Walker H. Wildmon ("W. Wildmon"), is an adult male citizen of Lee County, Mississippi. Defendant W. Wildmon is the spouse of co-defendant Lexie Hill Wildmon, is the son of co-defendant T. Wildmon, is an employee of the AFA Defendants, and served as Vice President of Operations of AFA and CEO and Member of the Board of AFA Action, during the relevant time period. Defendant W. Wildmon may be served at 108 Parkgate Drive, Tupelo, MS 38803. This defendant is called to defend Counts I (Retaliatory Termination), II (Hostile Work Environment), and III (Unlawful Termination).

7. Lexie Hill Wildmon ("L. Wildmon"), is an adult female citizen of Lee County, Mississippi, is the spouse of co-defendant Walker H. Wildmon, is the daughter-in-law of co-

defendant T. Wildmon, is an employee of the AFA Defendants, and served as Plaintiff's Administrative Assistant during the relevant time period. Defendant L. Wildmon may be served at 108 Parkgate Drive, Tupelo, MS 38803. This defendant is called to defend Counts II (Hostile Work Environment) and IV (Slander).

8. Defendant Marion "Buddy" C. Smith, Jr. ("Smith"), is an adult male citizen of Lee County, Mississippi. Defendant Smith is the father of co-defendant Stacey Smith Fowler, is an employee of the AFA Defendants, and served as Senior Vice President of AFA, and Member of the Board of AFA Action, during the relevant time period. Defendant Smith may be served at 108 Parkgate Drive, Tupelo, MS 38803. This defendant is called to defend Counts I (Retaliatory Termination), II (Hostile Work Environment), and III (Unlawful Termination).

9. Defendant Ronald E. Cook ("Cook"), is an adult male citizen of Lee County, Mississippi. Defendant Cook is an employee of the AFA Defendants, and served as Director of Localization of AFA, during the relevant time period. Defendant Cook may be served at 108 Parkgate Drive, Tupelo, MS 38803. This defendant is called to defend Count II (Hostile Work Environment).

10. Defendant Stacey Smith Fowler ("Fowler"), is an adult female citizen of Lee County, Mississippi. Defendant Fowler is the daughter of co-defendant Smith, is an employee of the AFA Defendants, and served as Vice President of Human Resources for AFA, during the relevant time period. Defendant Fowler may be served at 108 Parkgate Drive, Tupelo, MS 38803. This defendant is called to defend Counts I (Retaliatory Termination), II (Hostile Work Environment), and III (Unlawful Termination).

11. Defendant Abraham Hamilton, III ("Hamilton"), is an adult male citizen of Lee County, Mississippi. Defendant Hamilton is an employee of the AFA Defendants, and served as General Counsel and Public Policy Analyst of AFA, during the relevant time period. Defendant Hamilton

may be served at 108 Parkgate Drive, Tupelo, MS 38803. This defendant is called to defend Count II (Hostile Work Environment).

## II. JURISDICTION AND VENUE

12. This Honorable Court has federal question jurisdiction over the above captioned case under 28 U.S.C. § 1331, and civil rights jurisdiction under 28 U.S.C. § 1343 for a cause of action arising under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e) *et seq.*, and 42 U.S.C. § 1981.

13. This Court has subject matter jurisdiction over the Plaintiff's claims of sexual harassment, hostile work environment, retaliation, and other EEO violations. This Court has supplemental jurisdiction over Plaintiff's additional claims arising under Mississippi state law, each of which arise out of the same nucleus of common facts as Plaintiff's aforementioned EEO claims.

14. Venue is proper pursuant to 28 U.S.C. § 1391 because the Individual Defendants live and work in Northern Mississippi; and that is where, at all times relevant to this case, the AFA Defendants were conducting business; and that is where the events, acts, and omissions of the Defendants occurred, which gave rise to Plaintiff's claims for injuries, damages, and harms.

## STATEMENT OF FACTS

15. Defendants employed Plaintiff as Vice President of Policy and Legislative Affairs (AFA), Executive Vice President (AFA Action), and member of the Board of Directors (AFA Action), for nearly seven (7) years, beginning in September 2015.

16. In January of 2022, Defendant Cook made repeated, escalating, sexually suggestive comments to, and physical contacts with, Plaintiff, including while taking hold of Plaintiff's face and ear on at least one occasion. These comments included, but were not limited to:

> I see you're really good with that wrist action. I wonder how you got to be so good at that?
>
> Now you don't want me to get ahold of you, do you?
>
> You'd really like that wouldn't you?
>
> You'd like me to take you and get ahold of you.

17. Plaintiff immediately reported Mr. Cook's actions to the appropriate superiors employed by Defendants in January 2022, including Defendants W. Wildmon, Smith, Hamilton, and Fowler.

18. Defendant W. Wildmon provided Plaintiff with an incident report — which Plaintiff completed immediately — and articulated to Plaintiff that Plaintiff was not the first employee of the AFA Defendants to have complained against Defendant Cook's sexual misconduct.

19. Plaintiff would go on to engage Defendant Hamilton on multiple occasions between January and June 2022 in order to report Defendant Cook's behavior and inquire whether any action was being taken in response to his initial formal complaint against Defendant Cook.

20. Plaintiff's complaint about Defendant Cook was not the first time complaints from Plaintiff went unaddressed. For example, Plaintiff spoke to Defendant Smith in early June 2019 about Plaintiff's concern regarding Defendant AFA Action's IRS tax-exempt status being subject to revocation for failure to file an IRS Form 990 three years in a row. Plaintiff showed Defendant Smith an online article, published by "Slowly Boiled Frog," dated June 14, 2019 titled, "The Holier Than Thou Crowd and Tax Obligations," that indicated Defendant AFA Action had not filed an IRS Form 990 for the 2016 and 2017 tax years.

(https://web.archive.org/web/20191101162606/slowlyboiledfrog.com/2019/06/the-holier-than-thou-crowd-and-tax.html).

21. Plaintiff also raised questions to Defendant Smith about cross-entity accounting irregularities between Defendant AFA (a 501(c)(3) charitable organization) and Defendant AFA Action (a 501(c)(4) charitable organization). Defendant Smith sent an email, including a link to the article Plaintiff referenced on June 18, 2019, to then AFA CFO Keith Gann, Defendant W. Wildmon, and Defendant Hamilton.

22. Defendant Smith responded to Plaintiff's question about why, as mentioned in the referenced article, the AFA Defendants shared the same post office box, saying, "I'm glad about their confusion. . . ☺."

23. Defendants ignored Plaintiff's complaint and, two months after Plaintiff informed the AFA Defendants about the real possibility of the IRS revoking Defendant AFA Action's tax-exempt status, the IRS sent Defendant AFA Action notice on August 19, 2019 that its tax-exempt status had been revoked.

24. The pattern of ignoring complaints continued. For example, Plaintiff notified the AFA Defendants of another quotation from the referenced article about problems with Defendant AFA's 2018 IRS Form 990: "Several errors on the return include[d] the absence of Schedule R listing related organizations. On part IV line 34 AFA indicated that it has no related organizations. That is clearly untrue. AFA Action has overlapping directors and officers. It shares the same PO box with AFA." Defendants again took no corrective action.

25. In yet another example, Plaintiff raised a concern about possible embezzlement of certain funds from the AFA Defendants during a meeting on the topic of taxes due to the IRS. Plaintiff followed up with an email on July 30, 2019, to Defendants W. Wildmon, Hamilton, T. Wildmon,

and Smith, where he recommended "an audit of AFA Action beginning with FY 2015." Despite exchanging additional email correspondence with the aforementioned Defendants regarding his concerns over non-disclosure of related-party transactions between AFA and AFA Action as distinct 501(c)3 and 501(c)4 entities, respectively, and the need for an audit of AFA Action, Plaintiff's complaint was again ignored; no corrective action or audit was undertaken.

26. Plaintiff operated under the good faith belief that the AFA Defendants, and their agents, named as Individual Defendants herein (excluding Defendants Cook and L. Wildmon), would take such concerns seriously and would not retaliate against Plaintiff for reporting IRS Form 990 insufficiencies, and cross-entity accounting irregularities, as required by the AFA Defendant's internal Whistle-Blower Policy.

27. The AFA Defendants' Whistle-Blower Policy states that "Each director, officer, or staff member has an obligation to report in accordance with this policy . . . acts of misconduct []" and that no staff member "who in good faith reports a concern shall be subject to retaliation or adverse employment consequences." However, Plaintiff's concerns received no meaningful follow-up or resolution from the AFA Defendants, nor the Individual Defendants.

28. Despite Plaintiff's repeated complaints of sexual harassment, and contrary to the internal policies of the AFA Defendants regarding harassment and whistleblowing, nearly eight (8) months passed without the AFA Defendants or their respective agents — named as Individual Defendants herein (excluding Defendants Cook and L. Wildmon) — taking any meaningful remedial action. During this period of time, Plaintiff continued to suffer increasing discomfort, in the workplace due to Defendant Cook's ongoing engagement in verbal and physical conduct of a sexual nature targeted at Plaintiff, and the threat that it could happen at any time, inside or outside the office building.

29. Among Defendant AFA's many internal policies regarding employee conduct, "sexual or other unlawful or unwelcome harassment" is included among a list of "examples of infractions of rules of conduct that may result in disciplinary action, up to and including termination of employment." (Employee Handbook § 7.3). The Employee Handbook goes on to state that, "A report of sexual harassment or other harassment will be treated seriously, and a thorough investigation will be conducted. An employee who files a complaint will be treated fairly and courteously at all times and will not be retaliated against for making a report." (*Id.* at § 7.4.)

30. While Defendant W. Wildmon explicitly acknowledged to Plaintiff that at least one other employee had filed complaints with the AFA Defendants and their agents relating to Defendant Cook's behavior, and Defendant Smith explicitly acknowledged that Defendant Cook's behavior was "weird," there is no indication that Defendant Cook had been disciplined for his actions, much less terminated.

31. The AFA Defendants specifically mandated that no employee "who in good faith reports a concern shall be subject to retaliation or adverse employment consequences." (Whistle-Blower Protection Policy).

32. As an employee working for an organization purporting to follow federal laws, company policies, and employee handbook directives related to sexual harassment, Plaintiff suffered extreme distress due to the continued homoerotically-charged actions of Defendant Cook. Plaintiff was committed to the principles espoused, and policies published, by the AFA Defendants and their agents. However, neither the AFA Defendants, nor the Individual Defendants, took pains to comply with the principles and policies enumerated herein.

33. Defendant Cook's conduct was particularly offensive to Plaintiff given the context of Plaintiff and Defendant Cook's status as two adult males employed by the AFA Defendants, both

organizations professing "distinctly Christian" values — especially as between persons of the same sex.[1]

34. In early September 2022, Defendant L. Wildmon abruptly shared with Plaintiff that she had had a dream of him inappropriately kissing her infant child on the mouth and made unfounded, false comments to Plaintiff suggesting that he was a threat to the sexual innocence of children. Defendant L. Wildmon went further to state that she would no longer bring her minor children to the office because Plaintiff might harm them. Defendant L.Wildmon informed Plaintiff that she had shared her dream, and her interpretation of it, with numerous other individuals, including Defendant L. Wildmon's father, who is also an employee of the AFA Defendants, her mother, who is not an employee of the AFA Defendants, and her husband, Defendant W. Wildmon.

35. Defendant L. Wildmon's statements regarding her dream about Plaintiff shocked and disturbed Plaintiff, immediately causing Plaintiff to become angry to the point of a violent reaction (though he restrained himself from acting upon such emotion). Defendant L. Wildmon's comments added to Plaintiff's already-intense discomfort in the workplace, contributed to Plaintiff's emotional distress and caused unfounded reputational damage in his broader community, as Gregory Hill and Leann Hill were members of Plaintiff's church congregation and Sunday school groups.

---

[1] The AFA Defendants publicly espouse their position that "God ordained the marital covenant as the exclusive context for sexual contact to be enjoyed between a husband (one man) and his wife (one woman). As such, any extramarital sexual contact is decried by God as sinful conduct, and it is defined by God's Word as fornication and/or adultery." (AFA.net, Statement of Faith).

36. On the morning of September 22, 2022, in a meeting with Defendants W. Wildmon and Smith, Plaintiff raised his concerns regarding Defendant Cook for the tenth (10th) time and his concerns regarding Defendant L. Wildmon for the fourth (4th) time. Rather than address Plaintiff's concerns, as required by the AFA Defendants' internal policies, Defendant W. Wildmon became irate and ordered Plaintiff to leave the room, with Defendant Smith agreeing to terminate the meeting.

37. On the afternoon of September 22, 2022, approximately six (6) hours following Plaintiff's complaint regarding the sexual harassment perpetuated by Defendants Cook and L. Wildmon, Defendant L. Wildmon's defamatory comments, and the hostile work environment resulting from Defendants W. Wildmon, Smith, Fowler, Hamilton, Vitagliano, and T. Wildmon's failure to address Plaintiff's concerns, Defendant Vitagliano unexpectedly terminated Plaintiff via telephone on behalf of "the entire leadership team" after Plaintiff arrived in Madison, MS, where he had traveled on behalf of the AFA Defendants.

38. Plaintiff was informed his termination was allegedly about "respect for leadership," in the telephone conversation with Defendant Vitagliano, as follows:

> DEFENDANT VITAGLIANO: I'm here with Buddy [Smith], and, Rob, we just we just think the time has come kind of to part ways here. Leadership has been talking today, and we just think it would be best for [us] to let you go. And, you know the process that we go through here for that you know. We hope it is, you know, not a rancorous process. We, you know, wish you the best and want you to succeed, and um of course have a severance package for you, but we just think that with the developments that have occurred, we just think it's probably time for us to go in different directions. I know it's probably not a great time for this.
>
> PLAINTIFF: Well, everything sounded good this morning after talking with Walker [Wildmon] and Buddy [Smith], after the Ron Cook issue, And, then I share what Lexie [Wildmon], you know, told me, and I haven't done anything beyond that. So, I don't understand why that's, you know, problematic. I mean, somebody comes into my office and tells me these things, and then they tell me go, they go out and talk about it to other coworkers at work and then [to] other people it's...

DEFENDANT VITAGLIANO: OK, well I mean, this doesn't really have anything to do with those two things. In my understanding that was the first I'd heard about the thing with Lexie [Wildmon]. She did not tell anyone else. That was just she had just told you, but that the Ron Cook thing and the Lexie thing is not what this is about. This is just about you know respect for leadership and and...

PLAINTIFF: Well Ed, that is a bit surprising because Walker [Wildmon] and Buddy [Smith] said in the meeting there was nothing, you know, problematic about, you know, about me. They didn't like that I asked the questions about Ron [Cook] and didn't like it that I said what, you know, Lexie told me. And, what she told me that she told other people. And so, I don't, that really is shocking Ed, and news. You know, in what way have I been disrespectful to leadership?

DEFENDANT VITAGLIANO: Well … this is just part of the process, you know, we don't go into great detail on this. Leadership is unanimous on this, and we just, we just don't think it's gonna work for you to continue employment here. And if, this is not...this is not about Ron Cook. I didn't even know. I honestly didn't even know about that until maybe yesterday. That's not what this is about.

PLAINTIFF: Well, the timing is really interesting, Ed. After I bring up about being sexually harassed and then bringing up something that someone else told me that they were dreaming, had dreams about me and their child. And then, all of a sudden, you know, I get a phone call that that I'm being terminated, but it doesn't have anything to do with that? The timing is really odd.

DEFENDANT VITAGLIANO: It may seem that way, Rob. I don't know. I don't know what to tell you beyond the fact that we, you know, we just don't discuss these kinds of issues. It's just ….

PLAINTIFF: There's been no, no personnel review. There's been no saying, "hey Rob, you know, you've been disrespectful here." Nobody's ever come to me, Ed, and said, "Hey Rob, you're being disrespectful." Nobody.

DEFENDANT VITAGLIANO: Yeah. Well.. I know you're unhappy, you know.

PLAINTIFF: And so. Well Ed, you haven't said anything. You never said that, "Rob you're disrespectful." Buddy's never said that I've been disrespectful. Tim's never said that. Walker's never said it. Lexie never said it.

So that only leaves me to, you know, then asking, you know, the questions about Ron Cook is just … I explained to Buddy and Walker, I said "my understanding from the grievance process is that you submit something, and then I thought there was a process where, you know, the employer gets back with you, and say, hey, "here's where we talked about this, and this is what we found out." And, I'm just

going back and asking questions. "Hey, it's been nine months and I haven't heard anything." So..

[Conversation continues.]

39. The AFA Defendants specifically maintained a policy that "[f]or problems other than major infractions . . . [an] employee [would] normally be verbally counseled about the problem, first, with the intent of clearing up any misunderstanding and establishing behavior expected in the future." (Employee Handbook § 6.2) No such corrective action was raised with, or undertaken against, Plaintiff.

40. Despite, or perhaps because of, Defendant Vitagliano's complete inability to cite any example of Plaintiff's "disrespect for leadership," the AFA Defendants, in concert with their agents, the Individual Defendants named herein (excluding Defendants Cook and L. Wildmon), and specifically Defendant W. Wildmon, later manufactured the false justification that they had terminated Plaintiff for being "divisive" and for a purported "lack of humility."

41. In yet another manufactured justification after Plaintiff's termination, the AFA Defendants, in concert with their agents, the Individual Defendants named herein (excluding Defendants Cook and L. Wildmon), and specifically Defendant Smith, suggested that Plaintiff had a prior history of being "vindictive" towards his previous employer — a demonstrably false and reputationally damaging statement.

42. In truth, Plaintiff had never received any notice of workplace infractions, nor did Plaintiff ever receive any citations that he had violated any employment policy during his employment with the AFA Defendants. Defendant Fowler confirmed Plaintiff's impeccable record, under oath, during administrative proceedings held before an administrative law judge of the Mississippi Department of Employment Security (MDES).

43. On the Monday following Plaintiff's termination (which occurred the prior Thursday), during a regularly scheduled staff meeting, Defendant T. Wildmon represented, to the entire cadre of employees of the AFA Defendants, that Plaintiff was "a good family man" and that Plaintiff had not committed any "immoral, unethical, or illegal" actions precipitating his departure from the organization. Rather, Defendant T. Wildmon manufactured a fourth version of the reason for Plaintiff's termination: that Plaintiff's departure was the result of a "disagreement of philosophy."

44. Following Plaintiff's termination, the AFA Defendants, in concert with their agents, the Individual Defendants named herein (excluding Defendants Cook and L. Wildmon), sent Plaintiff a proposed "Severance Agreement," ("Agreement") which the aforementioned Defendants repeatedly pressured Plaintiff to sign — both within twenty-four hours of receiving it and again less than a week later.

45. The proposed Agreement, which was emailed to Plaintiff after he had traveled to Madison, MS on behalf of the AFA Defendants, was accompanied by email correspondence which tied Plaintiff's execution of the Agreement to the Defendants' willingness to "wholeheartedly recommend" Plaintiff to "others with whom you work in the future."

46. Notwithstanding Defendants' pressure to quickly sign the Agreement, and implicit threat to withhold a positive future recommendation, Plaintiff refused to sign the Agreement. Nevertheless, had Plaintiff signed the proposed Agreement, it would have been void for failure to include language required by the Age Discrimination in Employment Act (ADEA), as amended by the Older Workers Benefit Protection Act (OWBPA), including a twenty-one (21) day period to review, and a seven (7) day recission period.

47. In November 2022, Plaintiff filed an Equal Employment Opportunity Commission ("EEOC") charge against the Defendants, attached hereto as Exhibit A.

48. Plaintiff received a Dismissal and Notice of Right to Sue letter from the EEOC, post marked June 26, 2023, and attached hereto as Exhibit B.

49. The AFA Defendants, in concert with their agents, the Individual Defendants named herein (excluding Defendants Cook and L. Wildmon, whose actions perpetuated the hostile work environment in which Plaintiff was forced to work), blatantly refused to address the sexual harassment and reputational damage Plaintiff was made to suffer in the workplace. Plaintiff's termination, on the very day he complained, was egregious and intentionally retaliatory.

### IV.     COUNT I — RETALIATIATORY TERMINATION

50. Plaintiff hereby incorporates the foregoing paragraphs by reference as though fully set forth herein.

51. The AFA Defendants and their agents, the Individual Defendants named herein, excluding Defendants L. Wildmon, Cook, and Hamilton, unlawfully retaliated against Plaintiff by terminating him for reporting the sexual harassment of Defendants Cook and L. Wildmon, a protected activity under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981.

52. The aforementioned Defendants' retaliatory termination of Plaintiff has damaged his professional reputation among his peers. As a direct and proximate result of Defendants' unlawful retaliatory termination, Plaintiff has lost wages and benefits and has sustained other pecuniary loss.

53. The aforementioned Defendants further harmed Plaintiff by insinuating they would not provide Plaintiff a good recommendation to another employer unless Plaintiff refrained from

making disparaging comments about the AFA Defendants and signed the proposed Agreement, in contravention of Plaintiff's OWBPA protections. Plaintiff did not sign the Agreement.

54. Plaintiff has been denied opportunities for career advancement and is unable to secure employment in his field of expertise with another business within commuting distance from his home or elsewhere.

## V.     COUNT II — HOSTILE WORK ENVIRONMENT

55. Plaintiff hereby incorporates the foregoing paragraphs by reference as though fully set forth herein.

56. The actions of Defendants Cook and L. Wildmon — which included unwelcome, sexually charged verbal and physical conduct towards Plaintiff — constitute sexual harassment in the workplace in violation of Title VII.

57. As a result of the sexual harassment of Defendants Cook and L. Wildmon, Plaintiff suffered an increasingly hostile, offensive work environment during the last nine months of his employment.

58. The failure of the AFA Defendants to take immediate and appropriate corrective action, in conjunction with the actions and inaction of their agents, Defendants W. Wildmon, Fowler, and Hamilton, constitutes sexual harassment leading to the creation of a hostile, offensive work environment by an employer in violation of Title VII.

59. On information and belief, the failure of Defendants T. Wildmon and Vitagliano to take immediate and appropriate corrective action also contributed to and constituted sexual harassment leading to the creation of a hostile, offensive work environment by an employer in violation of Title VII.

## VI.   COUNT III — UNLAWFUL TERMINATION

60.    Plaintiff hereby incorporates the foregoing paragraphs by reference as though fully set forth herein.

61.    The AFA Defendants and their agents, the Individual Defendants named herein (excluding Defendants Cook and L. Wildmon), conspired to, and in a retaliatorily fashion did, terminate Plaintiff in violation of Mississippi jurisprudence, which requires that an employer who publishes and disseminates an employment manual which sets forth procedures for certain infractions must "follow its own manual in disciplining or discharging employees for infractions or misconduct specifically covered by the manual." *Bobbitt v. Orchard, Ltd.*, 603 So. 2d 356, 357 (Miss. 1992).

62.    Defendants' termination of Plaintiff without first verbally counseling Plaintiff in order to resolve any misunderstanding about his purported "divisiveness" constituted a violation of the AFA Defendants' prescribed and published procedures for addressing such a minor — though merely purported — infraction.

63.    Furthermore, the aforementioned Defendants terminated Plaintiff in violation of long-established Mississippi jurisprudence specifying that "an employee who is discharged for reporting illegal acts of his employer to the employer or anyone else is not barred by the employment at will doctrine from bringing action in tort for damages against his employer." *McArn v. Allied Bruce-Terminix Co., Inc.*, 626 So. 2d 603, 607 (Miss. 1993).

64.    Plaintiff was reporting the illegal acts of his employer — namely, the AFA Defendant's failure to take immediate and appropriate corrective action under Title VII — when he persistently attempted to urge an internal resolution to his complaints of Defendants Cook and L.

Wildmon's sexual harassment and slander against him. For his insistence that Defendants demonstrate internal accountability, Plaintiff was unlawfully terminated.

### VII.  COUNT IV — SLANDER

65. Plaintiff hereby incorporates the foregoing paragraphs by reference as though fully set forth herein.

66. Defendant L. Wildmon's verbal statements to multiple third parties regarding the interpretation of her dream about Plaintiff inappropriately kissing her infant child were false, insulting, and precipitated a forceful (though restrained) reaction from Plaintiff. As such, Defendant L. Wildmon's comments constitute actionable slander under Miss. Code Ann. § 95-1-1 (2023).

67. Alternatively, Defendant L. Wildmon's verbal statements constitute the actionable common law "tort of defaming a person's character or reputation through the spoken word ... [as] slander." *McFadden v. United States Fidelity & Guaranty Co.*, 766 So. 2d 20, 23 (Miss. Ct. App. 2000), *citing* W. Page Keeton *et al.*, Prosser and Keeton on the Law of Torts § 111 (5th ed. 1984)).

68. The false statements of Defendant L. Wildmon contributed to Plaintiff's unlawful termination by the AFA Defendants and their agents, as well as to Plaintiff's extreme distress over damage to his reputation in his community.

### VIII.  PRAYER FOR RELIEF

69. **WHEREFORE, PREMISES CONSIDERED,** Plaintiff respectfully prays that this Honorable Court cause service to issue upon the Defendant and that this matter be set for trial.

Upon trial by jury thereon, Plaintiff prays that the following relief be granted: (i) compensatory damages for lost wages, mental anxiety, and emotional distress; (ii) punitive damages against Defendants in an amount to be determined by the jury; and (iii) all costs, disbursements, pre-judgment interest, post-judgment interest, expert witness fees, and reasonable attorney's fees as allowed for actions brought pursuant to Title VII, 42 U.S.C. § 1981, Mississippi state law, and all other applicable law. Plaintiff also prays that this Court grant all further relief as is deemed just and proper.

**RESPECTFULLY SUBMITTED**, this the 5th day of September, 2023.

ROBERT N. CHAMBERS, Plaintiff

By: */s/ A. RHETT WISE*
A. RHETT WISE (MS Bar No. 9461)
rhettwise@bellsouth.net
PRIEST & WISE PLLC
353 North Green Street
P.O. Box 46
Tupelo, MS 38802
(662) 842-4656

CHRISTINE N. JONES (*pro hac vice pending*)
cjones@newmanjones.com
NEWMAN JONES PLLC
14747 N Northsight Blvd.
Ste 111-143
Scottsdale, AZ 85260
(480.686.7762)

ATTORNEYS FOR PLAINTIFF