IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

**ROBERT N. CHAMBERS, JR.**                                                **PLAINTIFF**

v.                                  Civil Action No.: 1:23-cv-000118-SA-DAS

**AMERICAN FAMILY ASSOCIATION, ET AL.**                   **DEFENDANTS**

### PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO ENFORCE SETTLEMENT

COMES NOW the Plaintiff, Robert N. Chambers, Jr. ("Chambers"), by undersigned counsel, with his Memorandum opposing Defendants' Motion to Enforce Settlement [Doc 42] and, in support thereof, would show the following:

### SUMMARY OF ARGUMENT

The Court should deny Defendants' motion because Defendants' own materials show that:

(1) The terms of Defendants May 20, 2024 offer are vague, indefinite and incomplete, and they required further negotiations.

(2) Either through Defendants' fraud or mistake, Defendants unilaterally inserted three new material terms into their June 17, 2024 initial "draft" settlement form, which were not in their May 20, 2024 offer and could not have been accepted by Plaintiff on May 23, 2024[1]. Because Defendants cannot bind Plaintiff to unilateral changes in a contract, the June 17, 2024 draft amounts to a new offer and demonstrates that negotiations were ongoing.

---

[1] At a July 22, 2024 settlement conference, Chambers told the Court that he had not accepted the May 20, 2024 terms, nor the June 17, 2024 draft terms. Plaintiff recognizes that this involves a communication problem between Plaintiff and his then attorney (Jones) but that it does not change Jones's ability to bind the Plaintiff through her statements to the Court and opposing counsel. However, it is relevant to the issue of mistake, especially considering the vagueness of Defendants' May 20, 2024 offer terms and the equally vague May 23, 2024 response from Jones: "I am authorized to accept your offer *in principle*. Please would you forward me a proposed settlement agreement and release, as well as a proposed letter. *We will revert with comments* as soon as possible." Defendants' Ex E. (emphasis added). Vagueness in both of these documents may well be the source of Defendants' mistaken belief that a settlement had been reached.

(3) Plaintiff rejected the new offer on July 12, 2024, and thereafter, on July 25, 2024 Plaintiff submitted his own draft settlement, including new terms that Defendants admit were inconsistent with Defendants' June 17, 2024 draft settlement form. This amounts to a counter-offer in ongoing negotiations.

(4) Defendants accepted some but not all of Plaintiff's new terms on July 29, 2024, thereby participating in continuing settlement negotiations.

(5) And on July 31, 2024, Defendants submitted their most recent counter offer in the form of their most recent draft settlement. It is undisputed that Plaintiff did not accept it. Thus, as a matter of law, there is no settlement for the Court to enforce.

I. **DEFENDANTS HAVE NOT MET THEIR BURDEN OF PROOF THAT THE PARTIES REACHED A MEETING OF THE MINDS AND FORMED AN ENFORCEABLE CONTRACT SETTLING THIS CASE.**

  (A) **STATE SUBSTANTIVE LAW AND FEDERAL PROCEDURAL LAW APPLY**

A "district court has inherent power to recognize, encourage, and when necessary, enforce settlement agreements reached by the parties." *Harmon v. J. Pub. Co.*, 476 F. App'x 756, at *2 (5th Cir. 2012) (citations omitted) (cleaned up). The Fifth Circuit Court of Appeals reviews "the district court's exercise of this inherent power for abuse of discretion." *Harmon*, 476 F. App'x at *2 (citation omitted). "A district court abuses its discretion if it: (1) relies on clearly erroneous factual findings; (2) relies on erroneous conclusions of law; or (3) misapplies the law to the facts." *Id.* (citation omitted). However, "the standard of review is effectively de novo because the district court [is] presented with purely legal questions of contract interpretation." *In re Deepwater Horizon*, 785 F.3d 1003, 1011 (5th Cir. 2015).

Defendants argue that federal law governs the enforcement of the purported settlement, at

Page **2** of **17**

least to the extent of Plaintiff's federal claims[2]. But they overlook the fact that the settlement agreement they seek to enforce included a choice of Mississippi *state* law as controlling "the validity, effect, and interpretation of this Agreement."[3] Their motion to enforce necessarily depends upon the settlement's "validity" as a binding agreement, and, thus, their own proposed choice of law clause should apply.

Application of state law also accords with federal precedent: "[T]he construction and enforcement of settlement agreements is governed by the principles of state law applicable to contracts generally." *Sundown Energy, L.P. v. Haller*, 773 F.3d 606, 611 (5th Cir. 2014) (citation omitted). *And see Lockette v. Greyhound Lines, Inc.*, 817 F.2d 1182 (5th Cir. 1987) ("[A]lthough federal courts possess the inherent power to enforce agreements entered into in settlement of litigation, the construction and enforcement of settlement agreements is governed by principles of state law applicable to contracts generally.") *Id*. at 1185 (quotation omitted).

But, of course, federal law always applies to *procedural* questions in federal court. See, *Hanna v. Plumer*, 380 U.S. 460, 464, 85 S. Ct. 1136, 1140 (1965) (citing the Rules Enabling Act, 28 U.S.C. s 2072 (1958 ed.)). "A district court may summarily enforce a settlement agreement if no material facts are in dispute; otherwise, an evidentiary hearing is required." *In re Deepwater Horizon*, 786 F.3d 344, 354 (5th Cir. 2015) (citation omitted).

**(B)** **THE MATERIAL TERMS OF DEFENDANTS' MAY 20, 2024 OFFER ARE INSUFFICIENTLY DEFINITE AND PLAINTIFF'S MAY 23, 2024 EQUALLY VAGUE ACCEPTANCE "IN PRINCIPLE" SUBJECT TO FURTHER "COMMENTS" WERE INADEQUATE TO CREATE A SETTLEMENT CONTRACT.**

Defendants claim that the emails on which they rely for the material terms of the settlement

---

[2] Defendants' Memo, p. 8. [Dkt 39]
[3] Defendants' Ex G. p. 7.

are so confidential that they can only refer to them "generally" in their memorandum.[4] They obtained an Order[5] from this Court restricting public access to the Exhibits on which they rely, and presumably they could have sought the same restriction with regard to both parties' memoranda on the pending motion. This would have allowed us to know Defendants' contentions *precisely*. But they did not do so, and the end result is that Defendants' motion and supporting memorandum do not disclose the *specific* settlement terms they seek to enforce. Their generalized arguments leave us to guess. For example, they ask the Court to enforce the settlement reached on May 23, 2024 according to their "release and attached letter" which they contend are "both consistent with the terms of that settlement."[6] But their Exhibits include three distinctly different settlement documents, two of which were proposed by Defendants[7] and all of which differ significantly from the May 20, 2024 offer.

The vagueness of Defendants' motion and memorandum do not comply with Rule 7, which requires all motions to "state with particularity the grounds" and the "relief sought." Fed. R. Civ. P. 7(b)(1). "This rule affords the court and the opposing party notice of the substance of the basis for the requested order[.]" *Matter of Cyr*, 838 Fed. Appx. 54, 64 (5th Cir. 2020).

Defendants seem to contend that they included all material terms in their May 20, 2024 offer.[8] But an examination of the May 20, 2024 offer shows that it did not include a sufficiently definite consideration term, i.e., it did not include the <u>time</u> for payment, nor the <u>actual payment amount</u> (both of these terms were first stated in Defendants' June 17, 2024 draft).[9] "Definite payment terms reduced to writing" are <u>always</u> essential, material contract terms. See, e.g., *Brown*

---

[4] Defendants' Memo, p. 3, summarizing the May 20, 2024 offer in Defendants' Ex. D, p. 1.
[5] See Order dated September 6, 2024. [Dkt 46]
[6] Defendants' Memo, p. 10.
[7] Defendants proposed the settlement and release documents in Defendants' Exhibits G and L. Plaintiff proposed the settlement in Defendants' Ex. L.
[8] See Defendants' Memo, p. 3, describing Defendants' Ex D.
[9] Compare Defendants' Ex D, p. 1, to Ex G, p. 2.

v. *Hederman Bros., LLC*, 207 So. 3d 698, 703 (¶ 21) (Miss. Ct. App. 2016) (citation omitted). In order for the payment term or "consideration to be valid, it must have been bargained for[.]" *White v. Nationwide Mut. Ins. Co.*, 323 So. 3d 494, 498 (Miss. 2021) (citing *Daniel v. Snowdoun Ass'n*, 513 So. 2d 946, 950 (Miss. 1987)).

In fact, the <u>overwhelming weight</u> of Mississippi federal and state jurisprudence holds that a valid binding contract must demonstrate "mutual assent" to a "consideration" term that is "sufficiently definite." See, e.g., *Moon River Foods, Inc. v. Red Chamber Co.*, No. 4:23-CV-189-SA-DAS, 2024 WL 4046589, at *3 (N.D. Miss. Sept. 4, 2024) (Slip copy); *Papin v. Univ. of Mississippi Med. Ctr.*, 109 F.4th 354, 364, 364 (5th Cir. 2024); *Papin v. Univ. of Mississippi Med. Ctr.*, 109 F.4th 354, 364 (5th Cir. 2024); *Mid Valley Pipeline Co., L.L.C. v. Rodgers*, 103 F.4th 1114, 1118 (5th Cir. 2024);

Moreover, Defendants' email accompanying that May 20,2024 offer made it contingent on *additional* negotiations. The email states: "I am authorized to make the following offer for a full and final resolution of this matter, *subject to the negotiation* and execution *of a mutually agreeable written settlement and release agreement*[.]"[10] "The importance of the parties' expression of an intent not to be bound" to a given draft "is manifest" and "Courts should not frustrate the parties' expressed intent." *Gulf Coast Hospice LLC v. LHC Grp. Inc.*, 273 So. 3d 721, 737 (¶45) (Miss. 2019). This is true even if the May emails had been letters of intent:

> Here, the letter of intent is plain and unambiguous. It states that the closing of the transaction will be subject to the satisfaction of mutually agreeable terms and conditions, including the negotiation, execution, and delivery of the satisfactory, definitive asset purchase agreement and any other documents necessary to consummate the proposed transaction. It is undisputed that a satisfactory, definitive asset purchase agreement was never executed. Accordingly, under the plain and unambiguous terms of the letter of intent, no enforceable written contract exists.

*Gulf Coast Hospice LLC v. LHC Grp. Inc.*, 273 So. 3d at 736.

---

[10] Defendants' Ex D, p. 1.

Defendants' motion asks the Court to "enforce the settlement achieved between the parties on May 23, 2024."[11] But they assert that this settlement was achieved by way of Plaintiff's former attorney's (Jones) email saying she was authorized to accept the May 20, 2024 offer "*in principle*" and would *"revert with comments* as soon as possible"[12] - a vague response to a vague and indefinite offer. "Comments" seems to mean "proposed changes." If anything, the May exchange signals that both parties understood that they had *almost* reached an agreement, but not quite. They were trying to avoid impasse, but, as of May 23, 2024, they had only agreed to agree. "Agreements to agree are unenforceable." See, e.g., *Gulf Coast Hospice LLC v. LHC Grp. Inc.*, 273 So. 3d at 737 (citation omitted).

The result of all of this vagueness is that Defendants cannot bear their burden of proof of the *precise* terms to which the parties purportedly agreed on May 23, 2024, because the terms were still amorphous and unformed. They were not sufficiently definite and both parties stated that the terms required additional negotiation. Without fully formed and definite terms, there can be no meeting of the minds. See, e.g., *Kuehn v. State Farm Fire & Cas. Co.*, No. 1:08CV577-LTS-RHW, 2010 WL 11530418, at *1 (S.D. Miss. June 15, 2010) (Unreported) (finding that the party seeking to enforce the settlement failed to meet its burden of proof of "elements of sufficient definiteness and mutual consent" and there was no meeting of the minds[.]")

And see, *Logan v. RedMed, LLC*, 377 So. 3d 956 (Miss. 2024) ("A contract is unenforceable if the material terms are not sufficiently definite.") *Id*. at 963 (citation omitted). "Mutual assent to a part of an agreement—even a vast majority of an agreement—does not equal mutual assent to the contract as a whole." *Id.* "If any essential terms are left unresolved, then no contract exists." *Id.* (citations omitted). "If *any essential* term is left open to future consideration,

---

[11] Defendants' Memo, p. 10.
[12] Defendants' Ex. E.

Page 6 of 17

there is no binding contract, and an agreement to reach an agreement imposes no obligation on the parties thereto." *Id.* (citation omitted). And the Mississippi Supreme Court has "*never* affirmed a trial court that has added any unagreed-upon terms to a contract." *Id.* (emphasis original).

Thus, Plaintiff's agreement "in principle" to Defendants' insufficiently definite offer did not create an enforceable settlement.

### (C) DEFENDANTS' JUNE 17, 2024 INITIAL DRAFT SETTLEMENT AGREEMENT WAS INCOMPLETE AND SIGNALED THAT YET MORE NEGOTIATIONS WERE REQUIRED.

Compounding all the indefiniteness in the May 2024 offer and acceptance, defense counsel's June 17, 2024 email equivocates as to whether Defendants themselves agree to the terms of their own initial draft settlement agreement, submitted that same date. The email states instead that counsel "believe[s] it is acceptable" to Defendants, but that counsel reserves "the right to make additional" changes or "edits" to it.[13]

Defendants argue that attorneys can bind their clients to the terms of a settlement as a matter of law in order to combat Chambers' continued insistence that he has not agreed to the terms Defendants offered at any time.[14] But, their Exhibits show that as of the June 17, 2024 initial draft agreement, Defendants had not made a clear commitment to their own settlement terms, and they expected additional negotiations and additional changes to it.[15] It is axiomatic that one cannot be held to have accepted an *hypothetical* offer. An offer is "[a] promise to do or refrain from doing some specified thing in the future, ... a display of willingness to enter into a contract on specified terms, made in a way that would lead a reasonable person to understand that an acceptance, having been sought, will result in a binding contract." Black's Law Dictionary (9th ed. 2009).

---

[13] Defendants' Ex. G, p. 1
[14] Defendants' Memo, p. 8, citing *Gates v. City of Biloxi,* at *8-9. [Dkt 39]
[15] See, Defendants Ex G (email accompanying June 17, 2024 initial draft agreement, stating "I *believe* it is acceptable to my clients, but reserve the right to make additional edits") (emphasis added).

Page **7** of **17**

Yet Defendants now insist that the Court should impose <u>still unspecified terms</u> on Plaintiff. They state, "Defendants have provided a release and attached letter, both consistent with the terms of that [May 23, 2024] settlement."[16] But they do not tell us which documents they are referring to and there are at least three different versions of a settlement and release in their Exhibits.[17] They admit that their May 20, 2023 offer called for an employment-related "letter by Defendants to Plaintiff, the form of which would be attached by Defendants to the settlement agreement and release."[18] But no such letter was attached to the June 17, 2024 initial draft settlement agreement and release.[19] Defendants submitted their first draft of a letter on June 19, 2024.[20] And the emails that accompanied both of these documents is noncommittal as to whether Defendants agree to their own terms: ""I *believe* it is acceptable to my clients, *but reserve the right to make additional edits*") (emphasis added)[21].

Defendants claim that Plaintiff's former counsel (Jones) accepted the vague May 20, 2024 offer (and the vague terms they want the Court to enforce) by way of her May 23, 2024 email stating "I am authorized to accept your offer *in principle*."[22] But in the May exchange of offer and acceptance, both parties maintained their right to change the terms of settlement - not that they had reached a *final* settlement. And this redrafting continued, as is discussed below, until July 31, 2024, meaning that no settlement was ever reached. See, e.g., *Gulf Coast Hospice LLC v. LHC Grp. Inc.*, 273 So. 3d 721 (Miss. 2019) ("Continual redrafting of the specific terms of a proposed agreement, as here, is a clear indicator of the importance of the provisions and the parties' intention to be bound only by the final execution and consummation of the agreement."). *Id.*, at 739.

---

[16] Defendants' Memo, p. 10.
[17] Different versions of a settlement and release appear in Defendants' Exhibits G, J, and L.
[18] Defendants' Memo, p. 3.
[19] See, Defendants' Ex D and G.
[20] See, Defendants' Memo, p. 4 and Defendants' Ex H.
[21] See, Defendants' Ex. G, p. 1 and H, p. 3.
[22] *Id*. pp. 3; 9, 10; and see Defendants' Ex E, p. 1.

Page **8** of **17**

**(D) DEFENDANTS' INITIAL DRAFT SETTLEMENT AGREEMENT WAS A NEW OFFER BECAUSE IT CONTAINED THREE NEW MATERIAL TERMS TO WHICH PLAINTIFF HAD NOT AGREED.**

Defendants' June 17, 2024 initial draft settlement agreement unilaterally added three new material terms: First, that 30% of the payment to Chambers would be treated as W-2 wages "subject to all applicable federal, state or local tax withholding, F.I.C.A., and any other applicable payroll deductions" and, further that "Plaintiff will assume any and all responsibilities for his tax obligations in connection with the Settlement Payments, *and shall fully indemnify, defend and hold Defendants and Released Entities ... from any and all such obligations, including any fees and costs which may be incurred by Defendants if claim for such obligations* are made upon them, or any of them."[23] The unspecified withholding amounts and payroll deductions unilaterally reduced the net settlement to Chambers. And the potential indemnification expenses resulting from claims that Defendants did not fulfill their withholding obligations related to Chambers is potentially staggering. It is <u>unlimited</u>. And it was never "bargained for." In order for this "consideration to be valid, it must have been bargained for[.]" *White v. Nationwide Mut. Ins. Co.*, 323 So. 3d at 498.

Merely agreeing to call 30% of the payment wages makes it taxable, as a matter of law. See, e.g., *Ruffin v. C.I.R.*, T.C. Summ. Op. 2011-136, 2011 WL 608990 (T.C. Dec. 7, 2011) ("If the settlement proceeds represent something that would have been taxable, such as wages, then the settlement proceeds, too, are taxable.") (citation omitted). It reduced the net benefit "agreed to" for Plaintiff and, by making 30% a deductible expense to the employer, it created an un-bargained-for benefit to Defendants.

The payment term (a/k/a price or consideration) is always an essential and material term of a contract. See, e.g., *Logan v. RedMed, LLC*, 377 So. 3d 956 (Miss. 2024) ("We have held that

---

[23] Defendants' Ex G, pp. 2, 3.

price is an essential term that must be stated with specificity." *Id*. (citation omitted). "A contract cannot be enforced if the price at stake is undeterminable." *Id*. (citations omitted). "A contract is unenforceable if the material terms are not sufficiently definite." *Id*. (citation omitted). "If any essential terms are left unresolved, then no contract exists." *Id*. (citations omitted). And the law "does not, as it turns out, support the proposition that a trial judge can fill in missing terms." *Id. at* 964 (citation omitted). It follows, of course, that if the Court cannot fill in or change a price term, Defendants were not at liberty to unilaterally change this term after Plaintiff "accepted" the May 20, 2024 offer, which did not include any payroll or indemnification/hold harmless obligations to be imposed on Chambers. He simply never agreed to them.

The second new material term in the June 17, 2024 initial draft requires Plaintiff to *indemnify, defend and hold all Defendants harmless* for any claim against them by federal authorities related to Medicare/Medicaid.[24] It is unknown how Medicare/Medicaid authorities could have any claims related to Chambers or the settlement amount. This case does not involve Medicare/Medicaid in any way. Whether the insertion of this clause was an act of fraud or mere mistake is unknown. But this clause has no known relevance to this case and Plaintiff never agreed to it.

This term exposes Chambers to *potentially limitless indemnification liability* – thereby potentially *reducing his settlement to net $0*, while simultaneously benefiting the Defendants in potentially limitless amounts. It is part of the payment term, and it is, therefore, material and essential.

The Mississippi Supreme Court has held that there is no meeting of the minds as to terms which potentially subject a person to undeterminable personal liability and indemnity obligations.

---

[24] Defendants' Ex G, pp. 4-5.

Page **10** of **17**

"In order for there to be a settlement, there must be a meeting of the minds." *Hastings v. Guillot*, 825 So.2d 20, 23 (Miss. 2002). *See, also,* Crowley *v. Germany*, 268 So. 3d 1277, 1279 (Miss. 2018) (quoting *Hastings, id*., and reversing lower court ruling enforcing settlement where Plaintiffs' counsel had not agreed to sign the release, and the release could be interpreted to mean that the attorneys were potentially subject to personal liability and indemnity obligations).

The third new term in Defendants' June 17, 2024 initial draft required Plaintiff to waive "all future actions against Defendants and the Released Entities for any private cause of action for damages pursuant to 42 U.S.C. § 1395(b)(3)(A)."[25] The referenced federal statute again deals with Medicare/Medicaid, and it has no bearing on this case.[26] It is the result of either fraud or mistake and should never have been included. It also subjects Chambers to a potentially limitless financial loss and reduction of the net settlement $0 by waiving unknown and unlimited claims that have no bearing on this case.

"[A] contract must be **specific and distinct** in its terms, plain and definite in its meaning, and must show with **certainty** that the minds of the parties had met and mutually **agreed as to all its details** upon the offer made upon the one hand and accepted upon the other." *Logan v. RedMed, LLC*, 377 So. 3d 956, 962 (Miss. 2024) (citation omitted) (emphasis added). Here, Defendants' Exhibits D, (Defendants' 5/20/2024 emailed offer); and G (Defendants' 6/17/20324 email and initial "draft" settlement) are vastly different. It defies reason to say that on May 23, 2024, Chambers agreed to the new material terms appearing for the first time in the June 17, 2024 draft settlement.

---

[25] Defendants' Ex G, p. 5.
[26] It provides: "The Secretary of Health and Human Services shall establish a health insurance advisory service program (in this section referred to as the "beneficiary assistance program") to assist medicare-eligible individuals with the receipt of services under the medicare and medicaid programs and other health insurance programs." 42 U.S.C.A. § 1395b-3(a).

Thus, no settlement was reached on May 23, 2024 and the Court should deny Defendants' request to "enforce the settlement achieved between the parties on May 23, 2024."[27]

**(E)  NEGOTIATIONS WERE ONGOING AT LEAST UNTIL DEFENDANTS SUBMITTED THEIR MOST RECENT OFFER, JULY 31, 2024.**

As shown above, Defendants' materials show that: Defendants' initial June 17, 2024 "draft" settlement form differed materially from their May 20, 2024 offer, because it included three new material terms that were not included in Defendants' May 20, 2024 offer, and which Plaintiff had not accepted. This made the June 17, 2024 draft a new offer.

Plaintiff rejected the June 17, 2024 draft (offer) and submitted his own (counter offer) on July 25, 2024. It, likewise, included new material terms that were *inconsistent* with Defendants' May 20, 2024 and June 17, 2024 offers[28]. On July 29 and 31, 2024, Defendants accepted some, but not all of Plaintiff's July 25, 2024 inconsistent terms, and submitted their most recent draft settlement form (counter offer),[29] which again includes the payment terms first presented after Plaintiff's May 23, 2024 acceptance "in principle." Thus, the parties continued negotiating through July 2024 and Plaintiff cannot possibly have reached a settlement with Defendants on May 23, 2024. The Court should not grant Defendants' motion to enforce this nonexistent settlement.

"[A] settlement is a contract, and like any other contract, it will be enforced according to its terms based on general principles of contract law." *Spencer v. Plumrose USA, Inc.*, No. 1:23-CV-91-SA-DAS, 2024 WL 3461047, at *10 (N.D. Miss. July 16, 2024) (citing *Taylor v. Reliance Well Serv., Inc.*, 220 So. 3d 260, 263, (¶ 9) (Miss. Ct. App. 2017) (citing *Hastings v. Guillot,* 825 So.2d 20, 23 (¶ 12) (Miss. 2002).

"Of particular importance to this inquiry is the elementary legal principle that the formation

---

[27] Defendants' Memo, p. 10.
[28] See Defendants' Memo, p. 5; Defendants' Ex. J.
[29] See Defendants' Ex. K and L.

of a contract requires a bargain in which there is a manifestation of mutual assent to the exchange and a consideration." *Plaza Home Mortgage, Inc. v. Innovated Holdings, Inc.*, No. 2:21CV38-HSO-BWR, 2023 WL 3145317, at *4 (S.D. Miss. Apr. 3, 2023) (Slip Opinion) (citing Rest. (2d) of Contracts § 17 (1981); and *White v. Jernigan Copeland Attorneys, PLLC*, 346 So. 3d 887, 896 (Miss. 2022).

The May 23, 2024 acceptance "in principle" of the vague May 20, 2024 offer is only tacit acquiescence. "Tacit acquiescence to the alleged agreement is insufficient to constitute a valid contract." *Imperial Indus. Supply Co. v. Thomas*, 825 Fed. Appx. 204, 206 (5th Cir. 2020). "Tacit acquiescence between relative strangers ignores the basic tenets of contract law" which require "a manifestation of mutual assent." *Id.* (citations omitted). "Mississippi contract law follows general common law principles on what constitutes mutual assent." *Id*. at 207 (citations omitted). "Mutual assent means a meeting of the minds of both ... parties to a contract; the fact that **each agrees to all the terms and conditions**, in the **same sense and** with the **same meaning as the others**." *Id*. (citations omitted) (emphasis added).

Here, there can be no dispute that negotiations were ongoing as late as July 31, 2024 because that fact is established by Defendants' own materials, despite that they argue a different interpretation of their Exhibits. *See, e.g., Mathis v. Jackson Cnty. Bd. of Supervisors*, 916 So. 2d 564, 569, (¶ 14) (Miss. Ct. App. 2005) ("Here, the parties dispute application of the facts but there is no dispute in the operative facts. Where the facts are undisputed the question is one of law.")

Defendants claim that "[t]here was no further counteroffer or change of consideration or other material terms" after May 23, 3034.[30] But Defendants' Exhibits shows the exact opposite, and the content of these Exhibits controls. See, e.g., *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*,

---

[30] Defendants' Memo, p. 3.

355 F.3d 370 (5th Cir. 2004) (holding that if an "allegation is contradicted by the contents of an exhibit attached to the pleading, then indeed the exhibit and not the allegation controls.") *Id*., at 377 (citing *Simmons v. Peavy–Welsh Lumber Co.,* 113 F.2d 812, 813 (5th Cir.), *cert. denied,* 311 U.S. 685, 61 S.Ct. 63 (1940).

First, Defendants' materials show that, after negotiations broke down, they resumed when Defendants made its May 20, 2024, vague and incomplete offer.[31] Mr. Chambers' prior counsel then advised that she was authorized to settle for Defendants' vague offer "in principle" on May 23, 2024[32]. Defendants then circulated their proposed form of settlement and release on June 17, 2024, but it contained three new material terms that were not included in Defendants' May 20, 2024[33] and which he never agreed to.

Mr. Chambers then rejected that proposed settlement on July 12, 2024, and, on that same date, Defendants acknowledged that the parties had "reached an impasse."[34] The court then held a settlement conference on July 22, 2024.[35]

**Thereafter, the parties resumed negotiations:** On July 25, 2024, Plaintiff's counsel submitted a revised settlement form to defense counsel, and Defendants' admit that its terms were inconsistent with their June 17, 2024 settlement form, and they also admit that, on July 29, 2024, they accepted many, but not all of these terms: "Defendants largely accepted the proposed revisions to the Settlement Agreement and Release, even as to some terms that were not consistent with the parties' original agreement[.]"[36] Plaintiff's settlement form included a <u>mutual</u> global

---

[31] Defendants' Ex D.
[32] Plaintiff's prior counsel wrote: ""I am authorized to accept your offer in principle. Please would you forward me a proposed settlement agreement and release, as well as a proposed letter. We will revert with comments as soon as possible." Defendants' Memo, p. 3, quoting Defendants' Ex E. [Dkt 39]
[33] See Defendants' Ex G, p. 2, ¶1(a) (30% as taxable wages); pp. 3-4 (Medicare indemnification); p. 4. (waiver of Medicare related claims).
[34] See Defendants Memo, p. Defendants' Ex I.
[35] [Dkt 32].
[36] Defendants' Memo p. 5. **And, compare Defendants' Ex D** (Defendants' 5/20/2024 emailed offer); **Defendants'**

release of claims, <u>mutual</u> confidentiality agreement, a letter of recommendation (as opposed to neutrality), and a <u>mutual</u> non-disparagement agreement.[37]

Defendants admit they accepted some of those inconsistent terms[38]. And by accepting these inconsistent terms, Defendants participated in new settlement negotiations. Thus, Defendants' own materials establish that **negotiations were still ongoing as late as Defendants' July 31, 2024, and that the matter was not settled, because there was still no meeting of the minds**. It is undisputed that the parties never reached an agreement thereafter.

"A fundamental principle of contract law is that the mutuality of assent to the terms of a contract may be shown by the acts or conduct of the parties where a signature is lacking." *Logan v. RedMed, LLC*, 377 So. 3d 956, 965 (Miss. 2024) (citation omitted). "Here, we not only have the lack of a signed settlement agreement, but the conduct of the attorneys ... directly refutes mutuality of assent." *Id.* "In the case sub judice, the parties indeed agreed to some material terms on their way to forming what might have become a binding contract, but they never agreed to be bound by the agreement as a whole." *Id.,* at 965–66.

Thus, the parties had not agreed to sufficiently definitive terms as of May 23, 2023; they did not reach an agreement as to new terms offered on June 17, 2024 by Defendants, and on July 25, 2024 by Plaintiff; and there is no settlement agreement for this Court to enforce.

---

**Ex G** (Defendants' 6/17/20324 "draft" settlement form); **Defendants' Ex J** (Plaintiff's 7/25/2024 settlement form); and **Defendants' Ex K** (Defendants' 7/29/2024 email accepting and rejecting parts of Plaintiff's 7/25/2024 settlement form); and **Defendants' Ex L** (Defendants' counter-offer in the form of their 7/31/2024 revised settlement form).
[37] Defendants' Ex J, p. 7-8.
[38] Defendants' Ex J.

**CONCLUSION**

On the basis of the Court's record and all of the foregoing, Plaintiff respectfully requests the Court to deny Defendants' Motion to Enforce Settlement [Dkt 42].

Respectfully submitted on this the 19th day of September, 2024.

              **Robert N. Chambers, Jr.,** PLAINTIFF

BY: */s/ Donald W. Medley*
   Donald W. Medley
   Counsel for Robert N. Chambers, Jr.

## CERTIFICATE OF SERVICE

      I, Donald W. Medley, hereby certify that on this day I electronically filed the foregoing pleading or document with the Clerk of the Court using the ECF system which sends notification of such filing to all registered attorneys identified in the system.

      This the 19th day of September, 2024.

                                      */s/ Donald W. Medley*
                                      Donald W. Medley
                                      Counsel for Robert N. Chambers, Jr.

Donald W. Medley
MS Bar #2832
Medley Law Group
902 West Pine Street
Hattiesburg, MS 39401
Tel: 601-544-8110
Fax: 601-544-8158
don@medleylawgroup.com