**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION**

**ROBERT N. CHAMBERS, JR.**                                      **PLAINTIFF**

**V.**                            **Civil Action No.: 1:23-cv-000118-SA-DAS**

**AMERICAN FAMILY ASSOCIATION ET AL.**           **DEFENDANTS**

**DEFENDANTS' MEMORANDUM
IN SUPPORT OF THEIR RENEWED MOTION TO DISMISS[1]**

Relying almost entirely on two isolated incidents that occurred during his employment

with American Family Association ("AFA"), former employee Robert Chambers sued AFA, its

affiliated entity AFA Action, and a litany of his former co-employees claiming that he was

subject to a hostile work environment and slandered during his employment, before being

unlawfully retaliated against and terminated. Chambers failed to adequately assert any claim for

relief, however, and the Court should dismiss his Complaint in its entirety.

**FACTUAL AND PROCEDURAL BACKGROUND[2]**

Plaintiff Robert Chambers ("Chambers") was employed by AFA as its Vice President of

Policy and Legislative Affairs for approximately seven years, from 2015 through the fall of

2022. Compl. p. 5, ¶ 15[Doc. 1]. Chambers was an at-will employee during his employment with

AFA, and the AFA Employee Handbook expressly provided that AFA could "terminate the

employment relationship at will and at any time, with or without advance notice or cause." Ex.

"A" to Mtn. ("AFA Employee Handbook"), p. 6.

---

[1] The Court denied without prejudice Defendants' previously filed Motion to Dismiss [Doc. 21] in light of the parties' settlement attempts, permitting Defendants to re-file their dispositive motion at a later date if necessary. The Court has recommended that Defendants' Motion to Enforce Settlement [Doc. 42] be denied, and Defendants now renew their Motion to Dismiss.

[2] Defendants disagree with and deny many of Plaintiff's allegations but accept them for purposes of this Rule 12(b)(6) motion only.

Chambers was ultimately terminated by AFA, and now alleges that almost a year prior to his termination, co-employee Ronald Cook[3] ("Cook") made sexually suggestive comments to Chambers while touching his ear in January of 2022. *Id*. at p. 6, ¶ 16; Ex. "B" ("EEOC Charge").[4] Chambers claims he repeatedly reported this incident to AFA on ten separate occasions during his employment, but that his complaints went unaddressed. *Id*. at p. 11, ¶ 36.

Chambers further claims that about nine months after the alleged ear-touching incident, Lexie Wildmon ("Wildmon"), also a co-employee and individual defendant, informed Chambers that she had a dream that Chambers had kissed her infant child on the mouth. *Id*. at p. 10, ¶ 35. As a result of the dream, Wildmon suggested, she could no longer bring her child to work. *Id*. Chambers alleges that Wildmon's comments caused him "to become angry to the point of a violent reaction (though he restrained himself from acting upon such emotion)." *Id*. Chambers alleges he complained to AFA about Ms. Wildmon's comments at least four times during his employment, including prior to his termination, during his termination, and after his termination. *Id*. at p. 11, ¶ 36.

Following his termination, Chambers filed a charge of discrimination with the Equal Employment Opportunity Commission (the "EEOC"), claiming that his "discharge was the result of [his] opposing sexual harassment of two (2) different types – the sexual harassment from Ron Cook and the sexual harassment of Lexie Wildmon." *See* Ex. "B". Chambers checked the box for "Other" as to the type of discrimination he alleged and wrote in: "Opposition." *Id*. At the

---

[3] Cook was originally named an individual defendant. Defendants filed a suggestion of death as to Cook on March 15, 2024 [Doc. 30]. No motion to substitute has been filed regarding Cook, and the claim against Cook was either extinguished upon his death or must be dismissed pursuant to Federal Rule of Civil Procedure 25(a)(1).

[4] *U.S. ex rel. Willard v. Humana Health Plan of Tex.*, 336 F.3d 375, 379 (5th Cir. 2003) ("In deciding a motion to dismiss the court may consider documents attached to or incorporated in the complaint and matters of which judicial notice may be taken." (citations omitted)).

conclusion of his charge, he "request[ed] the EEOC to investigate to determine whether the [Defendants] [were] liable to [him] for terminating [him] because [he] opposed sexual harassment." *Id*.

Chambers then sued AFA, its affiliate AFA Action, and his former co-employees Lexie Wildmon, Ronald Cook, Abraham Hamilton, III, Timothy B. Wildmon, Edward Vitagliano, Walker H. Wildmon, Marion C. Smith, Jr., and Stacey Smith Fowler (collectively, the "Individual Defendants"), claiming that he was subjected to a hostile work environment in violation of Title VII, that he was terminated in retaliation for reporting those events in violation of Title VII,[5] that he was unlawfully terminated in violation of Mississippi law, and that Ms. Wildmon's statements regarding her dream constituted slander under Mississippi law. *Id*. at pp. 15-18. Although employed by AFA, Chambers also sued AFA Action asserting that it should also be considered his employer for purposes of Title VII. *Id*. at p. 2. He has asserted his Title VII hostile work environment claim against both AFA and AFA Action, as well as his co-employees Ronald Cook and Lexie Wildmon. *Id*. at p. 16. He has asserted his Title VII retaliation claim against AFA and AFA Action, as well as co-employees Timothy B. Wildmon, Edward Vitagliano, Walker Wildmon, Marion Smith, Jr., and Stacey Fowler, though he includes scant factual allegations as to the individual defendants. *Id*. at p. 15. Regardless, Chambers has failed to plausibly state any claim for relief, and the Court should dismiss his Complaint in its entirety.

## STANDARD OF LAW

Rule 12(b)(6) authorizes dismissal for failure to state a claim. "To avoid dismissal, 'a

---

[5] As will be discussed below, Chambers also passingly references §1981 in his federal retaliation claim, though he pleads no facts in support of a § 1981 claim.

complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "To be plausible, the complaint's factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 570 (internal quotation omitted). In making this determination, courts accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff. *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008). The court does not, however, accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)); *see also Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the complaint's framework, they must be supported by factual allegations.").

**ARGUMENT**

**1.   Chambers' shotgun pleading is insufficient to assert a claim against the Individual Defendants.**

Federal Rule of Civil Procedure 8 requires that pleadings contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. The use of a "shotgun pleading" is insufficient to meet that burden, and occurs when the complaint either: a) relies on multiple counts "where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint," b) is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action," c) does not separate into a different count each cause of action or claim for relief, or d) asserts "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Thomas v. Univ. of Miss.*,

4

3:18-CV-62-GHD-RP (N.D. Miss. Dec. 17, 2018) (quoting *Weiland v. Palm Beach Cnty.*

*Sheriff's Office*, 792 F.3d 1313, 1321-23 (11th Cir. 2015)).

Chambers has sued eight of his former co-employees in their individual capacities but hardly references most of them in his substantive fact allegations. AFA's General Counsel, Abraham Hamilton, III, for instance, is "called to defend [Plaintiff's] Count II (Hostile Work Environment)," but Chambers' sole reference to him is that Chambers reported Mr. Cook's actions to him among others. Compl. pp. 5-15. Similarly, Chambers calls Stacey Smith Fowler to "defend Counts I, Retaliatory Termination), II (Hostile Work Environment), and III (Unlawful Termination)," but he includes hardly any fact allegations as to her involvement, aside from being "the daughter of co-defendant Smith" and the "Vice President of Human Resources." *Id.* at p. 4. Defendant Lexie Wildmon "is called to defend Counts II (Hostile Work Environment) and IV (Slander)" but the only allegations related to her are that she is "spouse of co-defendant Walker H. Wildmon, [] the daughter-in-law of co-defendant T. Wildmon" and that she had the dream upon which Chambers' slander claim is based.

Chambers provides little to no bases for his theories of liability against the Individual Defendants, and his generic inclusion of them into his various causes of action is insufficient to adequately assert a claim under Rule 8. Chambers' paltry allegations regarding the Individual Defendants are insufficient to adequately specify the specific acts they are each expected to defend against, and his claims against them should therefore be dismissed.

### 2. *Chambers cannot assert his Title VII claims against the Individual Defendants.*

Chambers' Title VII retaliation and hostile work environment claims are not only insufficiently pled under Rule 8, but they are also foreclosed by the statute itself. Title VII applies only to "employers," which requires (1) that the defendant meet the statutory definition

of employer and (2) that there be an employment relationship between the plaintiff and defendant. *Deal v. State Farm County Mut. Ins. Co.*, 5 F3d 117, 118 n. 2 (5th Cir. 1993). While Title VII's statutory definition of employer includes "any agent" of an employer, the Fifth Circuit has refused to interpret that language to impose individual liability on agents and has "repeatedly held that individuals simply cannot be liable under Title VII in either their individual or official capacities." *Lirette v. Sonic Drive-In Corp.*, 2023 U.S. Dist. LEXIS 72446, *8 (E.D. La. Apr. 26, 2023) (citing *Simmons v. UBS Fin. Servs., Inc.*, 972 F.3d 664, 669 (5th Cir. 2020)). Accordingly, a plaintiff cannot assert a Title VII claim against "an individual supervisor or fellow employee." *Mejia v. Ayala*, 2021 U.S. Dist. LEXIS 243893, *5 (N.D. Tex. Dec. 22, 2021) (citing *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007)).

Here, Chambers alleges that Individual Defendants Lexie Wildmon, Ronald Cook, Abraham Hamilton, III, Timothy B. Wildmon, Edward Vitagliano, Walker H. Wildmon, Marion C. Smith, Jr., and Stacey Smith Fowler were either his co-employees or supervisors, and not his actual employer. Chambers alleges no facts to suggest that the Individual Defendants either met the statutory definition of employer or actually employed Chambers, and the Court has repeatedly held that Title VII does not allow a plaintiff to recover against a co-employee. The Court should dismiss with prejudice Chambers' Title VII claims against the Individual Defendants.

### 3. *Chambers failed to administratively exhaust his Title VII hostile work environment claim.*

Before proceeding with a Title VII claim in federal court, a plaintiff must exhaust his administrative remedies. *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378-79 (5th Cir. 2002). "Exhaustion occurs when the plaintiff files a timely charge with the EEOC and receives a notice of right to sue." *Id.* Courts interpret what employment actions are properly embraced in review

of a Title VII claim by the scope of the EEOC investigation which could "reasonably be expected to grow out of the charge of discrimination." *Pacheco v. Mineta*, 448 F.3d 783, 789 (5th Cir. 2006).

"The Fifth Circuit has held that a claim is not reasonably expected to grow out of a Plaintiff's EEOC charge if the claim is absent on the charge form," and a plaintiff does not exhaust his administrative remedies for a claim when he either has not marked the box for a specific claim on his EEOC charge or otherwise described the claim. See *Hills v. LaShip*, 2017 U.S. Dist. LEXIS 209081, *11 (E.D. La. Dec. 20, 2017); *Anderson v. Venture Expr.*, 694 F. Appx243, 247 (5th Cir. 2017).

A hostile work environment claim cannot reasonably be expected to grow out of an employee's charge where it charges discrimination based only on the employer's discrete acts in terminating the employee and makes no mention of a hostile work environment. *See Gates v. Lyondell Petrochemical Co.*, 227 F. App'x 409, 410 (5th Cir. 2007) (affirming district court's dismissal of hostile work environment claim based on failure to exhaust); *see also Evans-Rhodes v. Northwest Diagnostic Clinic, P.A.*, 2014 U.S. Dist. LEXIS 20098, 2014 WL 645361, *3, *5 (S.D. Tex. Feb. 19, 2014) (dismissing hostile work environment claim for failure to exhaust where EEOC charge identified a single race-related comment, and "[t]here [was] nothing in that Charge itself that would suggest that the EEOC need[ed] to investigate whether a hostile work environment existed or indicate to Defendant that it might have a problem more pervasive than one insensitive employee"). To be timely, the charge must be filed "within 180 days after the alleged unlawful employment practice occurred." *Samies v. Chevron USA, Inc.*, 2017 U.S. Dist. LEXIS 64971, *10 (S.D. Miss. Apr. 28, 2017).

A hostile work environment claim may include otherwise time-barred acts where a

related act contributing to the same actionable claim occurred within the 180-day window. *Hollins v. Premier Ford Lincoln Mercury, Inc.*, 766 F. Supp. 2d 736, 741 (N.D. Miss. 2011) (citing *Nat'l R.R. Pass. Car v. Morgan*, 536 U.S. 101, 115 (2002)); *see also Chapa v. Univ. of Houston at Vict.*, 2021 U.S. Dist. LEXIS 188068, *15 (S.D. Tex. Sept. 30, 2021) ("A hostile work environment claim relying on conduct that occurred within and before the commencement of the limitations period must allege facts tending to show that the 'pre- and post-limitations period incidents involved the same type of employment actions, occurred relatively frequently, and were perpetrated by the same managers.'") (internal quotation omitted).

Here, Chambers asserted in his EEOC charge that he was terminated because of his "opposition" and did not reference an alleged hostile work environment, either in his narrative or check box summary. He asserted that prior to his termination the only things he "had done were to oppose sexual harassment," and that he had "opposed sexual harassment by filing [his] grievance against Ron Cook on January 27, 2022, and again complaining about the sexual harassment on September 22, 2022." *See* Ex. "B". He further claimed that he had "also opposed sexual harassment by complaining about Walker Wildmon's wife having made the absurd and hurtful claim that she had a dream that [he] had a sexual contact with her baby and that she would not bring her baby back to the workplace." *Id.* He concluded that his "discharge was the result of [his] opposing sexual harassment of two (2) different types – the sexual harassment from Ron Cook and the sexual harassment of Lexie Wildmon." *Id.* Chambers therefore specifically "**request[ed] the EEOC to investigate to determine whether the [Defendants] [were] liable to [him] for terminating [him] because [he] opposed sexual harassment**." *Id.* (emphasis added).

Chambers' hostile work environment claim could not have been reasonably expected to

grow out of his charge where he asserted he was discharged for opposing sexual harassment, and specifically requested that the EEOC investigate to determine whether Defendants were liable to him "for terminating [him] because [he] opposed sexual harassment." Chambers' charge centered on his termination, and his references to sexual harassment referred only to two isolated incidents.

Moreover, Chambers alleges that the ear-touching event involving Ron Cook occurred on January 27, 2022. His EEOC charge was dated November 22, 2022, approximately 300 days following the alleged event with Cook. The dream incident involving Wildmon was not in any way related to the prior incident involving Cook, and Chambers did not assert date range for the "DATE(S) DISCRIMINATION TOOK PLACE" or check the box claiming that it was a continuing action in his charge. Chambers failed to exhaust his hostile work environment claim based on the alleged incident involving Cook, a separate and unrelated event, regardless of whether the Court overlooks Chambers' express request that the EEOC investigate solely to determine whether he had been terminated because he "opposed sexual harassment." This Court should dismiss his hostile work environment claim based on his failure to administratively exhaust it with the EEOC.

### 4. *Chambers has not plausibly alleged a Title VII hostile work environment claim.*

Title VII's protections include protecting workers from discriminatorily hostile or abusive work environments. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993); *see also Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435 (5th Cir. 2011) (applying Title VII to a hostile work environment claim under the ADEA). "To plead a Title VII hostile work environment claim, a plaintiff must allege facts showing, among other things, that the 'harassment complained of affected a term, condition, or privilege of employment.'" *Perez v. Brennan*, 766 F. App'x 61, 65

(5th Cir. 2019) (quoting *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002)). "For harassment to affect a term, condition, or privilege of employment, it must be sufficiently pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.* (cleaned up).

Notably, "[i]solated incidents do not support a hostile work environment claim unless the complained-of incident is 'extremely serious' in nature." *Higgins v. Lufkin Indus*., 633 F. App'x 229, 235 (5th Cir. 2015) These standards are "are sufficiently demanding to ensure that Title VII does not become a 'general civility code.'" *West v. City of Hous.*, 960 F.3d 736, 742 (5th Cir. 2020) (*citing Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).

Although no single factor is determinative in assessing whether a work environment is objectively hostile, pertinent considerations are (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance. *West*, 960 F.3d at 742 (*citing Harris*, 510 U.S. at 23).

In *Perez*, for instance, the Fifth Circuit found the plaintiff had failed to plausibly state a claim for relief where he had alleged that his supervisor had called Hispanic/Mexican American employees "lazy" and issued a warning about attendance and a suspension notice. 766 F. App'x at *65. In *Hockman v. Westward Communications, LLC*, the court found that the plaintiff failed to establish a hostile work environment even where a harasser had made a remark to the plaintiff about another employee's body, slapped the plaintiff on the behind with a newspaper, grabbed or brushed against the plaintiff's breasts and behind, held the plaintiff's cheeks and attempted to kiss her, asked the plaintiff to come to the office early so they could be alone, and stood in the door of the bathroom while she was washing her hands. 407 F.3d 317, 327-28 (5th Cir. 2004);

*see also Whitlock v. Lazer Spot, Inc.*, 657 F. Appx 284, 287 (5th Cir. 2016) (affirming dismissal of hostile work environment claim where plaintiff failed to allege facts demonstrating that "he was repeatedly subjected to harassment that was linked to his race.").

Here, Chambers fails to allege he suffered from an objectively hostile work environment. He identifies only one conversation he allegedly had with Ronald Cook in January of 2022, in which he asserts that Cook stated, "[n]ow you don't want me to get ahold of you, do you?" in multiple iterations. Compl. p. 6, ¶ 16 [Doc. 1]; *see also* Ex. "B" ("EEOC Charge"). His only other specific allegation regarding claimed sexual harassment is his unrelated assertion that eight months later, in September of 2022, Lexie Wildmon shared with him that "she had had a dream of him inappropriately kissing her infant child on the mouth" and then asserted that "she would no longer bring her minor children to the office . . ." *Id.* at p. 10, ¶ 34. These minor, isolated incidents are insufficient to have altered the terms and conditions of Chambers' employment and to have created a hostile work environment. The events were infrequent and isolated,[6] mild in nature, non-threatening, and insufficient to interfere with Chambers' work performance. Because Chambers has failed to allege facts showing that the harassment complained of was sufficiently severe, or even sexually discriminatory, the Court should dismiss his hostile work environment claim.

---

[6] Attempting to gloss over the rarity of these claimed events, Chambers alleges that the ear-touching event occurred "at least once" during his employment. But even under Chambers' own factual allegations, the event occurred exactly once during his employment.

### 5. *Chambers has not plausibly alleged a Title VII retaliation claim.*[7]

"To survive a Rule 12(b)(6) motion, a plaintiff alleging Title VII retaliation must plead facts showing: 1) that [he] engaged in protective activity, 2) that an adverse employment action occurred, and 3) that a causal link exists between the protected activity and the adverse employment action." *Sanchez v. Bexar Cnty.*, 2022 U.S. Dist. LEXIS 11985, *14 (W.D. Tex. Jan. 24, 2022) (cleaned up). Title VII, however, protects an employee only from "retaliation for complaining about the types of discrimination it prohibits." *Brackens v. Stericycle, Inc*., 829 F. App'x 17, 21 (5th Cir. 2020). For claims of sexual harassment, the court recognizes that there is a "gray area" between an actual violation and a perceived violation in which a reasonable but mistaken belief may be held regarding protected activity, but that standard cannot be met where no reasonable person could have believed the incidents complained of violated Title VII. *See*, e.g., *O'Daniel v. Indus. Serv. Sols*., 922 F.3d 299, 306 (5th Cir. 2019); *EEOC v. Rite Way Serv*., 819 F.3d 235, 243 (5th Cir. 2016) (abrogated on other grounds).

As set forth above, the isolated incidents Chambers complained of did not give rise to a Title VII violation. Moreover, no reasonable person could have thought that these two isolated

---

[7] Chambers also references 42 U.S.C. § 1981 in his claim for retaliatory termination. Section 1981 does not support a claim for gender and/or sex discrimination. *See*, e.g. *Rhyce v. Martin*, 173 F. Supp. 2d 521 (E.D. Law. 2001) ("Although § 1981 strikes at many forms of racial discrimination, no court has held that allegations of gender-based discrimination fall within its purview. Courts at every level of the federal judiciary have considered the question and reached the opposite result."). And while a plaintiff may assert a § 1981 retaliation claim, it applies only where the plaintiff claims he was retaliated against for "attempting to vindicate the rights of others to make and enforce contracts." *Se*e, e.g., *Rivera v. Townsquare Media Broad., LLC*, 309 F. Supp. 3d 441, 449 (W.D. Tex. 2018). Chambers alleges no facts related to a potential race claim, and he does not allege that he was attempting to vindicate the rights of others to make and enforce contracts under § 1981. His §1981 claim should be dismissed to the extent he intended to assert such a claim.

incidents gave rise to a Title VII violation.[8] Chambers' federal retaliation claim should likewise be dismissed.

### 6. Chambers has not plausibly alleged wrongful termination under Mississippi law.[9]

In the face of Mississippi's long-standing commitment to the employment-at-will doctrine, Chambers also attempts to assert a state-law wrongful termination claim. "Mississippi rigidly follows the common law employment-at-will principle, that is, 'a contract for employment for an indefinite period may be terminated at the will of either party, whether the discharge is for any reason or no reason at all.'" *Cmty. Care Ctr. of Aberdeen v. Barrentine*, 160 So. 3d 216, 218 (Miss. 2015) (citing *Buchanan v. Ameristar Casino Vicksburg, Inc.,* 852 So.2d 25, 26 (Miss. 2003)).

However, the Mississippi Supreme Court has carved out two narrow exceptions to the employment at-will doctrine, which allow an at–will employee to sue for wrongful discharge when the employer either violates a contractual reprimand policy, or the employee is terminated for opposing or reporting criminal activity. *See Crawford v. Bannum Place of Tupelo*, 2013 U.S. Dist. LEXIS 2815, *7 (N.D. Miss. Jan. 8, 2013). Here, neither exception applies.

---

[8] As noted above, even Chambers did not file an EEOC charge based on alleged sexual harassment or claimed hostile work environment.

[9] Chambers' state-law unlawful termination claims fails on its merits for the reasons set forth herein, but his attempt to assert this claim against the Individual Defendants is clearly-foreclosed by Mississippi law. In *DeCarlo v. Bonus Stores, Inc*., the Mississippi Supreme Court held plainly that Mississippi's "*McArn*-created exceptions [to the employment-at-will doctrine] were intended only to impose liability on the employer and not on the individual defendants who are acting in the course and scope of their employment when participating in the discharge giving rise to the retaliatory discharge claim." 989 So.2d 351, 358 (Miss. 2008). Further, the Court held "the laws of Mississippi do not allow for liability for the tort of retaliatory discharge even if the individual defendant's participation in the discharge was in the course and scope of the individual defendant's employment." *Id.*

### A. *Chambers failed to adequately allege a Bobbitt claim.*

When an employer furnishes its employees a handbook or manual that sets forth procedures to be followed in reprimanding, suspending, or discharging its employees, then the employer is obligated to follow its own provisions, even in the absence of a formal employment contract. *Id.* (citing *Bobbitt v. The Orchard, Ltd.*, 603 So. 2d 356 (Miss. 1992); *Slatery*, 747 So.2d at 259 (Miss. 1999)). The Mississippi Supreme Court has recently reiterated that "t]he exception created by *Bobbitt* is a narrow one." *Collins v. City of Newton*, 240 So.3d 1211, 1217 (Miss. 2018) (denying firefighters' wrongful termination claim where city's employee handbook "unequivocally provided that employment with the City is at will"). The *Bobbitt* exception is inapplicable where, as here, an employer expressly disclaims the creation of a contractual obligation. *See Byrd v. Imperial Palace of Mississippi*, 807 So. 2d 433, 436-37 (Miss. 2001) ("holding that when there is a disclaimer which expressly provides that the employment relationship is at-will, the handbook in question does not create a contractual obligation that overrides the at-will doctrine."); *Lee v. Golden Triangle Planning & Dev. Dist., Inc*., 797 So 2d 845, 848 (Miss. 2001) (same).

Here, Chambers alleges that his termination was unlawful under *Bobbitt* because AFA terminated him "without first verbally counseling [him] in order to resolve any misunderstanding about his purported 'divisiveness'," which he contends was a violation of its "prescribed and published procedures for addressing such a minor—though merely purported—infraction." Compl. p. 17, ¶ 62 [Doc. 1]. As Chambers correctly notes, the AFA employee handbook provides that "[f]or problems other than major infractions . . . the employee will normally be verbally counseled about the problem, first, with the intent of clearing up any misunderstanding and establishing behavior expected in the future." *Id*. at p. 13, ¶ 39.

14

Contrary to Chambers' partial reading, however, the handbook also expressly provides that "Employment with AFA is at will," and that "AFA may terminate the employment relationship at will and at any time, with or without advance notice or cause." Ex. "A" to Mtn. ("AFA Employee Handbook"), p. 6. The handbook underscores that the "[p]olicies set forth in this handbook are not intended to create a contract, nor are they to constitute contractual obligations of any kind or a contract of employment between AFA and any of its employees." *Id*.

Based on the plain terms of AFA's employee handbook, Chambers' *Bobbitt* claim necessarily fails. As underscored by Mississippi's federal and state courts, an employer's express reservation against the creation of any contractual right to a disciplinary process is fatal to a *Bobbitt* claim. The AFA handbook expressly disclaimed the creation of any contractual right, and Chambers' wrongful discharge claim fails.

### B. Chambers has failed to adequately allege a McArn claim.

Where an employee is terminated because he or she has refused to participate in illegal activity or has reported the illegal activity of his employer to the employer or to anyone else, a suit for wrongful discharge can be brought, despite the at-will status of the employee. *McArn v. Allied Bruce–Terminix Co*., 626 So. 2d 603, 607 (Miss. 1993); *Laws v. Aetna Finance Co*., 667 F.Supp. 342, 348 (N.D.Miss.1987). To do so, the employee must also present proof of a "causal nexus" between the "protected activity" and the "employment action." *Crawford v. Bannum Place*, 556 F. App'x 279, 285 (5th Cir. 2014).

The activity of which a *McArn* plaintiff complains must also be "actually illegal." *Obene v. Jackson St. Univ.*, 233 So. 3d 872, 876 (Miss. App. 2017). A plaintiff pursuing a wrongful discharge claim must prove "that the acts complained of warrant the imposition of criminal penalties, as opposed to mere civil penalties." *Hammons v. Fleetwood Homes of Miss., Inc.*, 907

So. 2d 357, 360 (Miss. Ct. App. 2004) (*citing Howell v. Operations Mgmt. Intern., Inc.*, 161 F. Supp. 2d 713, 719 (N.D. Miss. 2001)). Moreover, "the subjective intent or belief of the plaintiff" is irrelevant because "the act itself must be criminal to implicate the exception …." *Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 404 (5th Cir. 2005). A *McArn* plaintiff must demonstrate she objected to her employer's conduct "*because* it was illegal" – not simply because it bothered her. *Jones v. Fluor Daniel Servs. Corp.*, 959 So. 2d 1044, 1048 (Miss. 2007) (emphasis in original).

A *McArn* claim also requires "substantial evidence of the criminal act." *Guice v. Therapy Mgmt. Corp.*, No. 3:18-cv-734, 2020 U.S. Dist. LEXIS 66575, at *13 (S.D. Miss. Feb. 20, 2020). Plaintiff "must state with specificity the allegedly illegal conduct, point to evidence of record to support [her] allegations, and describe how that conduct violated a criminal statute." *White v. Cockrell*, 190 So. 3d 878, 883 (Miss. App. 2015).

Here, Chambers alleges that he was terminated for reporting the "illegal acts of his employer—namely, the AFA Defendants' failure to take immediate and appropriate corrective action under Title VII—when he persistently attempted to urge an internal resolution to his complaints of Defendants Cook and Wildmon's sexual harassment and slander against him." Compl. pp. 17-18 ¶ 64.[10] As made clear above, these incidents did not give rise to a violation of Title VII. More fundamentally, though, a *McArn* plaintiff must prove that the acts complained of

---

[10] Chambers includes in the body of his Complaint factual recitations regarding his internal reporting of potential deficiencies as to Defendants' informational reporting obligations with the Internal Revenue Service, but he does not base his unlawful termination claim on those actions. *See* Compl. p 17. Chambers previously attempted to rely on those un-cited allegations, underscoring his widespread usage of shotgun pleading. Regardless, those acts do not give any additional support to Chambers' *McArn* claim, as he alleges only that he "operated under the good faith belief that . . . [Defendants] would take such concerns seriously and would not retaliate against Plaintiff for reporting IRS Form 990 insufficiencies, and cross-entity accounting irregularities . . . . Compl. p. 8 ¶ 26. Chambers does not allege that such alleged deficiencies were criminal, or that he perceived them to be, and would not support a *McArn* claim. *See Kyle v. Circus Circus Miss., Inc.*, 430 F. App'x 247, 253 (5th Cir. 2011) (holding that plaintiff's allegations regarding tax deficiencies were insufficient to invoke *McArn* because they did not support a claim of criminal tax evasion).

16

were criminal in nature, and must state with specificity the alleged illegal conduct and describe

how that conduct violated a criminal statute. Chambers' claim that he was terminated for

reporting claimed sexual harassment is insufficient to state a *McArn* claim, and the Court should

dismiss his state-law wrongful termination claim.

### 7. *Chambers has not plausibly alleged a slander claim.*

Slander, which is the spoken form of defamation, requires proof of "special harm," unless

the statements are considered defamation per se. *Cook v. Wallot*, 172 So. 3d 788, 798 (Miss. Ct.

App. 2013). To establish even ordinary defamation, Chambers must prove "(1) a false and

defamatory statement concerning the plaintiff; (2) an unprivileged publication to a third party;

(3) fault amounting at least to negligence on the part of the publisher; and (4) either actionability

of the statement irrespective of special harm or the existence of special harm caused by the

publication." *Simmons Law Group, P.A. v. Corporate Management, Inc.*, 42 So. 3d 511, 517

(Miss. 2010) (citing *Moon v. Condere Corp.,* 690 So. 2d 1191, 1195-96 (Miss. 1997)).

"The trial court in a defamation case must make the threshold determination of whether

the language in question is actionable."[11] To be actionable, (1) "the words employed must have

clearly been directed toward the plaintiff" and (2) "the defamation must be clear and

unmistakable from the words themselves and not be the product of innuendo, speculation or

conjecture." *Ferguson v. Watkins,* 448 So. 2d 271, 275 (Miss. 1984). These restrictions "must be

*strictly enforced*."[12]

---

[11] *Armistead v. Minor,* 815 So. 2d 1189 (Miss. 2002); *Chalk v. Bertholf,* 980 So. 2d 290, 297 (Miss. Ct. App. 2007) (quoting *Mitchell v. Random House, Inc.,* 703 F. Supp. 1250, 1258 (S.D. Miss. 1988)) (Mississippi courts consider on motions to dismiss issues such as "whether the statement at bar is capable of bearing a defamatory meaning, whether it is 'of and concerning' the plaintiff, whether is protected opinion, whether there is jurisdiction over the defendant, and whether the suit is barred by privilege.").

[12] *Id.*; *Chalk,* 980 So. 2d at 297-98 (For defamation claims, the complaint must "provide allegations of sufficient particularity so as to give the defendant. . . notice of the nature of the complained-of statements . . . Without setting forth any information in the complaint regarding the statements, to whom the

A defamatory statement is "any written or printed language which tends to injure one's reputation, and thereby expose him to public hatred, contempt or ridicule, degrade him in society, lessen him in public esteem or lower him in the confidence of the community." *Armistead,* 815 So. 2d at 1193.

Opinion statements are considered defamation "only if they clearly and unmistakably imply the allegation of undisclosed false and defamatory **facts** as the basis for the opinion." *Ferguson,* 448 So. 2d at 276 (emphasis added); *Perkins v. Littleton,* 270 So. 3d 208, 215 (Miss. Ct. App. 2018). If the hearer "must struggle to see how and whether [the statements] defame, by definition the words are not defamatory in law." *Ferguson,* 448 So. 2d at 273 (quoting *Lawrence v. Evans,* 573 So. 2d 695, 698 (Miss. 1990)). "The said-to-be-offending words must be set in the context of the entire utterance." *Lawrence,* 573 So. 2d at 698.

Here, Chambers alleges that Ms. Wildmon's "verbal statements to multiple third parties regarding the interpretation of her dream about Plaintiff inappropriately kissing her infant child were false, insulting, and precipitated a forceful (though restrained) reaction from Plaintiff." Compl. p. 18 ¶ 66. Chambers overlooks, however, that Wildmon's comments about a *dream she had* were by definition not statements of fact. Wildmon did not say that Chambers had kissed her child; she said that she'd had a dream he kissed her child. The purported defamation claimed by Chambers was not clear and unmistakable from the words used but was instead by its very nature the product of innuendo, speculation and conjecture. Wildmon, by relaying or interpreting her own dream, did not imply the allegation of undisclosed fact as the basis for any opinion; they were expressly premised on her fictional dream. As such, Chambers cannot establish a

---

statements were directed, by whom the statements were made, and how the statements were slanderous, the allegation that [Plaintiffs] made slanderous statements constitutes a bare legal conclusion with no support in the complaint.").

defamation claim based on his own pleading. Since Chambers' slander claim is a product of "innuendo, speculation, or conjecture," this Court should dismiss the claim.

### 8. *The Court should dismiss Plaintiff's claims against Cook.*

While Cook was originally named an individual defendant, Defendants filed a suggestion of death as to Cook on March 15, 2024 [Doc. 30]. Under Federal Rule of Civil Procedure 25(a)(1), if no motion to substitute is made with 90 days after the filing of a suggestion of death, the action against the decedent must be dismissed. No motion to substitute has been filed regarding Cook, and the individual claim against Cook was either extinguished upon his death or must be dismissed pursuant to Federal Rule of Civil Procedure 25(a)(1). The Court should dismiss Plaintiff's claim against Cook.

## CONCLUSION

AFA employed Chambers on an at-will basis, and his wrongful termination claims fail under both federal and state law. The two isolated events Chambers complains of are insufficient to support either his Title VII hostile work environment or retaliation claims, and his state-law *McArn* and *Bobbitt* claims fare no better. His slander claim against one of his co-employees for a dream she had also fails. Chambers has failed to state any claim for relief, and the Court should dismiss his Complaint in its entirety.

THIS, the 25th day of November 2024.

Respectfully submitted,

**AMERICAN FAMILY ASSOCIATION, AFA ACTION, TIMOTHY B. WILDMON, EDWARD VITAGLIANO, WALKER H. WILDMON, LEXIE HILL WILDMON, MARION "BUDDY" C. SMITH , JR., RONALD E. COOK , STACEY SMITH FOWLER, AND ABRAHAM HAMILTON, III**

*/s/ J. Andrew Mauldin*
POPE S. MALLETTE (MB NO. 9836)
J. ANDREW MAULDIN (MB NO. 104227)
*Attorneys for Defendants*

19

Of Counsel:

MAYO MALLETTE PLLC
2094 Old Taylor Road, Suite 200
Oxford, Mississippi 38655
Telephone: (662) 236-0055
Facsimile: (662) 236-0035
*pmallette@mayomallette.com*
*dmauldin@mayomallette.com*